IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 7, 2019

## BRODERICK D. V. CARMEN v. JESSICA ANN MURRAY

**Appeal from the General Sessions Court for Putnam County**
**No. 15-CV-65        Steven D. Qualls, Judge**

_____

### No. M2018-00146-COA-R3-CV

_____

In this post-divorce dispute, Father petitioned to modify custody, and Mother filed a counter-petition to modify child support.  At trial, both parents agreed to specific modifications to the parenting plan and to set child support according to the Child Support Guidelines.  But they could not agree on a location for exchanging the children.  After hearing limited testimony from the parents, the court chose an exchange location, set child support, and approved the agreed parenting plan.  Unhappy with aspects of the new plan, Father filed a motion to alter or amend or for a new trial.  The court denied Father's motion but granted Mother's motion to recalculate child support to reflect the parents' actual parenting time.  Because the court's order approving the modified plan does not comply with Tennessee Rule of Civil Procedure 52.01 and the record lacks a sufficient basis to support a best interest determination, we vacate the modification of the parenting plan and remand for the court to conduct a new evidentiary hearing on whether modification of the parenting plan is in the children's best interest and enter an order compliant with Rule 52.01.  In all other respects, the decision of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Vacated in Part; Affirmed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jason F. Hicks, Cookeville, Tennessee, for the appellant, Broderick D. V. Carmen.

Mark E. Tribble, Cookeville, Tennessee, for the appellee, Jessica Ann Murray.

## OPINION

## I.

On August 29, 2014, the Cumberland County Probate and Family Court granted Broderick D. V. Carmen ("Father") and Jessica Ann Murray ("Mother") a divorce. As part of the divorce decree, the court approved and incorporated an agreed permanent parenting plan for the parties' two minor children. The plan named Mother the primary residential parent and granted Father 110 days of residential parenting time to be exercised on all non-school days.

Mother moved to Wyoming with the children before the divorce was final. The parenting plan designated St. Louis, Missouri as the meeting point for exchanging the children for visitation. Long distance transportation costs were divided equally. Father was not required to pay child support.

On April 20, 2015, Father filed a petition to modify the permanent parenting plan in the General Sessions Court for Putnam County, Tennessee.[1] Father sought a change in custody based on a material change in circumstances. Mother denied Father's material change allegations and filed a counter-petition for modification of child support.

At trial, the attorneys announced that the parents had agreed to modify the parenting plan and recalculate child support. After the attorneys described the specific terms of the agreement to the court, both parents voiced their approval of the announced changes.

The parents agreed that Mother would remain the primary residential parent but that the residential parenting schedule should be modified. The new plan reduced Father's parenting time to 98 days to be exercised in two large blocks. Father had custody of the children for the majority of every summer break and for two additional weeks during either the fall or winter break, depending on the year. The parents also agreed to set child support in the new plan according to the Child Support Guidelines. *See* Tenn. Code Ann. § 36-5-101(e)(2) (Supp. 2019).

But they sharply disagreed on the best method for exchanging the children for visitation. The court heard proof solely on that issue. After the parents testified, the court ruled that it was in the best interest of the children for the parents to meet in Lincoln, Nebraska, approximately halfway between their respective homes, for exchanges.

---

[1] Jurisdiction was transferred to the general sessions court by agreement.

Ten days later, Mother moved to reopen the proof on child support. She explained that Father had indicated he would not be exercising his upcoming summer parenting time. So she asked the court to use actual days of parenting time to calculate child support rather than the days allotted in the new parenting plan.

On June 19, 2017, the court entered a final order approving and incorporating the agreed parenting plan. The court set Father's monthly child support as agreed at trial. But neither party received notice that the court had entered the final order.[2]

Father later had second thoughts about his agreement. In a post-trial motion, he complained that the modified plan did not allow him to exercise his parenting time and asked the court to reinstate the original exchange location and child support order.

After a hearing, the court denied Father's motion but agreed to recalculate child support based on the parents' actual parenting time. Other than the change in child support, the June 19, 2017 order remained in effect.

## II.

According to Father, the new parenting plan and child support obligation "deprive[d] [him] of the ability to exercise his parenting time." We review the trial court's decisions concerning parenting plans and child support for an abuse of discretion. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *accord Richardson*, 189 S.W.3d at 725.

We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister*, 414 S.W.3d at 692-93. We review the trial court's conclusions of law de novo with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

### A. MODIFICATION OF PERMANENT PARENTING PLAN

When assessing a request to modify a permanent parenting plan, our courts first determine whether a material change in circumstances has occurred and, if so, consider

---

[2] After Father appealed to this Court, we determined that the trial court's orders were not final because they did not comply with Tennessee Rule of Civil Procedure 58. *See* Tenn. R. Civ. P. 58; *Steppach v. Thomas*, No. W2008-02549-COA-R3-CV, 2009 WL 3832724, at *4 (Tenn. Ct. App. Nov. 17, 2009). On July 9, 2018, the court entered an agreed final order that complied with Rule 58.

whether modification of the current plan is in the children's best interest.  *Id.* at 697-98.  Here the first step of the inquiry is unnecessary because the existence of a material change is undisputed.  *See Stricklin v. Stricklin*, 490 S.W.3d 8, 15 (Tenn. Ct. App. 2015) (holding that the material change "inquiry is not required when parties agree to modify a parenting plan"); *In re Makinna B.*, No. M2018-00979-COA-R3-JV, 2019 WL 2375434, at *3 (Tenn. Ct. App. June 5, 2019) (declining to consider whether a material change in circumstances had occurred when neither parent contested the issue).

But the trial court is not relieved of its obligation to conduct a best interest analysis.  *See Stricklin*, 490 S.W.3d at 18.  The trial court is "the ultimate arbiter of the best interest of the children within its purview." *Fletcher v. Fletcher*, No. M2010-01777-COA-R3-CV, 2011 WL 4447903, at *8 (Tenn. Ct. App. Sept. 26, 2011).  The best interest analysis remains mandatory even when the parents have agreed to the allocation of parental responsibilities in a parenting plan.  *See* Tenn. Code Ann. § 36-6-407(a) (2017); *see also Tuetken v. Tuetken*, 320 S.W.3d 262, 272 (Tenn. 2010) (explaining that a trial court is never bound to accept a parent agreement affecting the child's best interest). In determining best interest, courts must consider a non-exclusive list of factors found at Tennessee Code Annotated § 36-6-106(a).  Tenn. Code Ann. §§ 36-6-404(b), -405(a) (2017).

With the exception of introductory material, the order approving the modified plan provided in its entirety:

> The parties announced an agreement that a material change of circumstances has occurred since the original parenting plan was adopted. They have further agreed to a new parenting plan and child support with the excepting of the location for child exchanges.  After hearing evidence from the parties and arguments from the respective attorneys the Court finds and Orders as follows:
> 1.    The Permanent Parenting Plan attached hereto as Ex. 1 is entered as the Order of the Court, it being in the best interest of the children.
> 2.    The Father is ordered to pay child support per the Tennessee Child Support Guidelines in the amount of $301.00 through the Tennessee Child Support Receipting Unit.
> 3.    Each parent will be allowed 4 telephone calls per week with the children while not in that parent's care. The telephone calls will be at 8:00 a.m., Mountain Standard Time.
> 4.    Child exchanges will be at the Gateway Mall in Lincoln, Nebraska between the hours of 8:00 and 9:00 p.m.

The court specifically found that the modified plan was in the children's best interest.  But the court gave no indication as to how and why it reached that conclusion. *See Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4

(Tenn. Ct. App. Feb. 22, 2013). The best interest analysis is a "particularly fact-intensive process" requiring careful consideration of the relevant statutory factors. *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). A court is not required to "list and discuss each factor." *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005). But the court's findings should demonstrate consideration of the relevant factors. Here, the court made no factual findings at all.

Tennessee Rule of Civil Procedure 52.01 requires trial courts to make findings of fact and conclusions of law, even if neither party requests them. *See, e.g., Ward v. Ward*, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *14 (Tenn. Ct. App. June 20, 2013). "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012). Without sufficient findings, we are left to wonder on what basis the court made its decision. *See Hardin v. Hardin*, W2012-00273-COA-R3-CV, 2012 WL 6727533, at *3 (Tenn. Ct. App. Dec. 27, 2012) (quoting *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009)). And while we could conduct our own independent review of the record, we decline to do so here due to the lack of relevant evidence.

The record in the trial court must reflect a sufficient basis for the court to make a best interest determination. *Fletcher*, 2011 WL 4447903, at *10. Here, the trial court only heard limited testimony about each parent's desired exchange location. So we vacate the court's decision adopting a new parenting plan and remand for the court to hold a new evidentiary hearing on whether modification of the parenting plan is in the children's best interest. After considering the relevant statutory factors, the court should make a best interest determination with detailed findings based on the circumstances of the parties and the children as of the date of the hearing. *See Stricklin*, 490 S.W.3d at 19.

On remand, the court may again adopt the current parenting plan or a different one that serves the children's best interest.[3] Until the court renders its decision on remand, the current, modified plan will remain in place as a temporary plan.

## B. MODIFICATION OF CHILD SUPPORT

Father also contends that the trial court erred in modifying child support. Tennessee Code Annotated § 36-5-101(g)(1) directs a court to modify child support at the request of a party

---

[3] We are unpersuaded by Father's argument that the court erred in changing the exchange location because the issue was not pled. Once a material change has occurred sufficient to modify the residential parenting schedule, the court has broad discretion to implement a modified plan that serves the best interest of the children. *Armbrister*, 414 S.W.3d at 706-07.

when there is found to be a significant variance . . . between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101(g)(1); *see also* Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(c) (defining significant variance).

Father maintains that the original child support order included a downward deviation for long distance travel expenses.[4] *See* Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(c) (authorizing a court to deviate from the presumptive amount of child support "[i]f parenting time-related travel expenses are substantial due to the distance between the parents"). If so, modification may be unwarranted. *See* Tenn. Code Ann. § 36-5-101(g)(1); Tenn. Comp. R. & Regs. 1240-02-04-.05(5). But we conclude that Father waived this issue. *See* Tenn. R. App. P. 36(a). Although Father raised this issue in his pleadings, at trial he agreed to the entry of a new support order based on the Guidelines. The trial court set child support consistent with Father's position at trial.

Father belatedly requested reinstatement of the deviation in his post-trial motion. We find no error in the court refusing to allow Father to repudiate his agreement after it was announced at trial and approved by the court. *See Stricklin*, 490 S.W.3d at 14-15 (holding Father's "attempt to repudiate the agreement post-judgment [did] not invalidate [his previously established] consent").

We also find Father's argument that the trial court erred in calculating his child support obligation based on his actual parenting time unavailing. Our courts have previously held that child support should be calculated on the "*actual number* of days [a parent] will exercise" not the days allotted in the parenting plan. *Scot v. Scot*, No. M2018-00562-COA-R3-CV, 2019 WL 2323826, at *7 (Tenn. Ct. App. May 31, 2019); *see Allen v. Allen*, No. M2013-00271-COA-R3-CV, 2014 WL 1713231, at *5 (Tenn. Ct. App. Apr. 28, 2014).

## III.

In the absence of sufficient findings of fact and conclusions of law, we vacate the court's order modifying the parenting plan. We remand with instructions for the trial

---

[4] It is not clear from this record that the previous child support order resulted from a court-ordered deviation. Neither the original parenting plan nor the attached child support worksheet mentions a deviation. And the court's mandatory findings of fact supporting the deviation are conspicuously absent. *See* Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(c).

6

court to hold a hearing on best interest and to determine, consistent with Tennessee Code Annotated § 36-6-106(a), whether modifying the parenting plan is in the children's best interest. If so, the court should adopt a modified parenting plan that serves the children's best interest. If the court adopts a modified parenting plan, the court may also consider whether child support should be modified in light of any changes in parenting time. To avoid disruption for the children, the current, modified plan shall remain in effect as a temporary parenting plan until the court renders its decision on remand. In all other respects, we affirm the trial court's decision.

_____
W. NEAL McBRAYER, JUDGE